# 1577-14

ORIGINAL

## IN THE TEXAS COURT OF CRIMINAL APPEALS

RECEIVED

JAN 2 6 2015

COURT OF APPEALS
SECOND DISTRICT OF TEXAS
DEBRA SPISAK, CLERK

## PETITION FOR DISCRETIONARY REVIEW

CHARLES MARTIN v. THE STATE OF TEXAS

APPEAL under Chapter 64.01 Tex. C.C.P.
APPEALS Number: 2-14-00003-CR
TRIAL Number: 38,715-C

Date of Judgement: October 9, 2014

FILED IN
COURT OF CRIMINAL APPEALS

FEB 06 2015

Abel Acosta, Clerk

IN THE SECOND COURT OF APPEALS
SECOND DISTRICT OF TEXAS
Tim Curry Criminal Justice Center
401 W. BelKnap, Suite 9000
FortWorth, Texas 76196

Date of Appeal: Jan. 10, 2014

## ORAL ARGUMENTS ARE HEREBY WAIVED.

RECEIVED IN
COURT OF CRIMINAL APPEALS

FEB 04 2015

Abel Acosta, Clerk

(pg. 1)

# TABLE OF CONTENTS

Pg. 1 ... Statements Regarding Oral Arguments, Names of Parties, Dates of filing. And Date of Ruling of Appeals Court.

Pg. 2 ... Statement of the Case ... Explaining why this hearing was held. What happened at the hearing. The evidence and requests to adequately perserve error.

Pg. 3 ... STATEMENT OF PROCEDURAL HISTORY ... showing date opinion was handed down ... statement that no motion for rehearing was filed ... or otherwise dispose of. ~ Ground for Review ... Showing why Appellant was denied, and Appellate court errored in its decision. With Questions.

Pg. 4 ... Argument ... showing by law that the case should be reversed. And how Appellate court should have granted relief.

Pg. 5 ... Prayer + Certificate of Service

Appendix — I. Motions for inclusion. (Exhibit filings), N.O.A. And Request for Preparation, both Asking for perservation and inclusion of finger print cards.

Appendix — II. Partial, Reporter Record, shows the court of conviction, the certification by County Clerk, witness at hearing, pg 3, And exhibits presented to the Appellate Court pg. 9, Also objection by Attorney.

Appendix — III. Opinion of the Appellate Court.

(i)

# INDEX OF AUTHORITIES

1) pg.4 ... Darrington v. State, 493 SW2d 244 (Tex. Crim. App. 1973)

2) pg.2 ... Dinkins v. State, 84 SW3d 639, 642 (Tex. Crim. App. 2002)

3) pg.2 ... Texas Code of Crim. Proc. art. 64.01 (b) (2) (DNA)

4) pg.3 ... Texas Code of Crim. Proc. Art. 64.03 (a) (1) (West Supp 2014)

5) pg.4 ... Gaskin Rule

6) pg.4 ... Gaskin v. State, 353 SW2d 467 (Tex. Crim. App. 1962)

7) pg.4 ... Jencks Act

8) pg.4 ... Jenkins v. State, 912 SW2d 793, 804 (Tex. Crim. App. 1993)

9) pg.4 ... McCormick Law - Evidence §§ 34-39

10) pg.3 ... Moore v. State, 509 SW2d 349 (Tex. Crim. App. 1974)

11) pg.4 ... Moore v. U.S., 353 A. 2d 16, 19 (D.C. 1974)

12) pg.4 ... Odom v. State, 766 SW2d 257, 259 (Tex. Crim App 1989)

13) pg.4 ... Schepp v. State, 432 SW2d 261 (Tex. Crim. App. 1968)

14) pg.2 ... Schwartz v. State 477 N.W. 2d 422, 427 (1989)

15) pg.2 ... Swearingen v. State, 303 SW3d 728, 733-34 (Tex. Crim. App 2010)

16) pg.4 ... Tex. Jur. 3d Crim. Law § 2446 (1982)

17) pg.4 ... Tex. Rules Crim. Evidence 614 (f) (1)

18) pg.4 ... U.S. v. Welsh, 810 F. 2d 485, 487, 490 (5th Cir) cert. denied 484, U.S. 955, 108 S. Ct. 350, 98 L. Ed 2d 376 (1987)

19) pg.2 ... www.bioforensics.com/articles/champion1/champion1.html.

20) pg.4 ... Zanders v. State 480 SW2d 708 (Tex. Crim. App. 1972) cert. denied 421 U.S. 951, 95 S. Ct. 1685, 44 L. Ed. 2d 106 (1995)

# STATEMENT OF THE CASE

This is A DNA case under Ch. 64.01(b)(2). Where the petitioner is seeking follow up testing, and newer and more probative testing results through PCR testing. see: Swearingen v. State, 303 S.W.3d 728, 733-34 (Tex. Crim. App. 2010) Dinkins v. State, 84 S.W.3d 639. 642 (Tex. Crim. App. 2002). The STR Testing which is out dated, and has now been criticized as being unscientific and has been strictly limited by courts. Available at; http://www.binforensics.com/articles/champion1/champion1.htm1. see Also: Schwartz v. State, 447 N.W. 2d 422, 427 (1989) "criticizing the use of statistical probabilities associated with DNA and limiting their use." As shown in Petitioner's Appellant Brief, pg.s 8-12.

At the hearing in question the States' expert witness Annette Wang, took the petitioner's finger prints, and gave her testimony for a comparison with the supposed original prints. All exhibits were entered and incorporated into the records and minutes of the court.

Because the petitioner was not allowed an expert testimony in this case. The petitioner requested by Motions, the inclusion of all exhibits, designating the finger print cards be included, for appellate review. It is easily ascertained when viewing said card and exhibits, that they do not match the prints of the petitioner. The requested exhibits which were incorporated into the record and minutes of the court was not sent, nor offered, or admitted for Appellate Court review. Said finger print cards, and exhibits were the petitioner's sole point of error. see: Appendix, I, Appendix, II pg. 4, lines 4-7, Appendix, III, last (para) pg. 2

(pg.2)

# STATEMENT OF PROCEDURAL HISTORY

1) Date of any previous opinion? - None    /current opinion Date: Oct.9,2013

2) Date of any order of the Court of Appeals disposing the case without an Appeal? No previous order disposing this case without an appeal.

3) There was No Motion for Rehearing filed in this case.

## GROUND FOR REVIEW
## I
## THE APPEALS COURT ERRORED BY FINDING EVIDENCE WAS SUFFICIENT

The Appeal Court's Judgement, and Opinion weighs heavily on the finger print card evidence to affirm the trial court's ruling. see: Appendix III; pgs 2-4. How can this or any other court accurately find the evidence was sufficient without viewing the actual evidence (exhibits)?

The Motion for inclusion were "timely" filed. Being made before the record being approved. Moore v. State, 509 SW2d 349 (Tex. Crim. App. 1974). The petitioner's attorney at said DNA hearing. Mr. Dustin Nimz, objected to this one sided, unfoundational viewing and use of said finger print cards, perserving error in this instant case. Thus prompting the petitioner to seek persevation of this critical, and material evidence by filing said Motions for inclusion of, and presentation of it, to and before, the Court of Appeal. see: Reporters Record; Appendix III, pg. 53 lines 5-25; pg. 54 line 1-25; pg. 55 lines 1-8. Which shows harm, and prejudice. Because the entire episode was a one sided ordeal concern this critical and crucial evidence being the petitioners sole point of error, to show that identity is an issue in this case. Ch. 64.03 (a) (1) (West Supp. 2014).

(pg. 3)

# ARGUMENT

According to McCormick Law - Evidence §§ 34-39, Darrington v. State, 493 SW2d 244 (Tex. Crim. App. 1973), "Failure of Court to grant Motion to include the statement, or report in the record will result in automatic reversal. The reason for requiring a request for inclusion of the statement or report in appellate record is to allow the Appellate court to consider it in determining whether the defendant was prejudiced by its concealment." Schepp v. State, 432 SW2d 261 (Tex. Crim. App. 1968); Gaskin v. State, 353 SW2d 467 (Tex. Crim. App. 1962)

"It is axiomatic that when requested, the trial court must order a witness' statement incorporated into the trial record, to afford a defendant the opportunity to show harm if any. Zanders v. State, 480 SW2d 708 (Tex. Crim. App. 1972), cert. denied, 421 U.S. 951, 95 S.Ct. 1685, 44 L. Ed 2d 106 (1995); Darrington v. State, and cases cited therein." Odom v. State, 766 SW2d 257, 259 (Tex. Crim. App. 1989). Showing this honorable Court of Criminal Appeals, that the ruling of the Court of Appeals should be reversed because they didnot include, as request by Motion, the evidence, exhibits at the hearing in this case. See also; Jenkins v. State 912 SW2d 793, 804 (Tex. Crim. App. 1993) showing this is also a violation of: Tex. Rules Crim. Evidence 614 (f)(1), and the Gaskin Rule: 22 Tex. Jur. 3d Criminal Law § 2446 (1982), (describing Gaskin Rule as applicable where States witness has "made a report, or given a statement). Where in this case, the States witness, Annette Wang, took the defendants finger prints in open court. Then testified against him, taking the witness stand as an expert witness. Investigation reports can be considered "statements" under Jencks Act, U.S. v. Welsh 810 F.2d 485, 490 (5th Cir) cert. denied; 484 U.S. 955, 108 S.Ct. 350, 98 L.Ed 2d 376 (1987). It is well settled that notes and reports made in course of criminal investigations are statements, under Jencks Act. Under Jenck's Act, the burden of why material cannot be produced is on the Government. Moore v. U.S. 353 A. 2d 16, 19 (D.C. 1974). All showing that the ruling in this instant case should be reversed.

## PRAYER

Petitioner, Charles Martin, prays therefore, that the Court of Criminal Appeals, would allow consideration of this petition for discretionary review And grant the relief sought, therein. By reversing the ruling of the Appellate Court because of the violations cited in this petition, and remanding, with instructions back to the trial court.

## SO MOVED AND PRAYED FOR

Date: January 22, 2015

Signature: Charles Martin
Pro-Se
Charles Martin. #1101119
McConnell Unit
3001 S, Emily Dr
Beeville, Tx. 78102

## CERTIFICATE OF SERVICE

I, Charles Martin, #1101119, currently housed at the TDCJ-ID, McConnell Unit, in Beeville, Tx. Do hereby certify that I have placed a true copy of petitioner, Petitioner FOR Discretionary Review, in the U.S. first class mail postage prepaid to: Clerk, Second Court of Appeals, Tim Curry Criminal Justice Center. 401 W. Belknap, Suite 9000, Ft. Worth, Tx. 76196

Date: January 22, 2015

Signed: Charles Martin
Pro-Se petitioner

(pg. 5)

# APPENDIX #1

# Exhibit: "Filings"

Cause No 38715-C

Charles Martin ) ( IN THE 89th District Court
TDCJ-ID# 1101119 ) ( OF
V. ) ( WICHITA COUNTY
THE STATE OF TEXAS ) (

FILED FOR RECORD
AT: _____ 9 O'Clock _____ M

JAN 2 2013

PATTI FLORES, Clerk Dist.
Courts & County Courts at Law
Wichita County Texas
By _____ Deputy

## NOTICE OF APPEAL
## PURSUANT CH.64.05
### Tex. Code of Crim. Proc.

Comes Now Defendant Charles Lee Martin, TDCJ-ID#1101119, and files Notice of Appeal concerning the recent hearing held under Ch.64 Tex. Code of Crim. Proc. on December 12, 2013 in the 89th District Court, Wichita County Courthouse, Wichita Falls, Tx. The Defendant now seeks his appeal in this matter, and contends that the evidence presented in this case is insufficient to sustain his conviction. Where the defendant had already established under Ch.64.03 by a preponderance that a reasonable probability exist that the person would not have been prosecuted or convicted if exculpatory results had been obtained through DNA Testing. The defendant contends, that the Court has abused its discretion under art. 64.02 (1), (2), (A) (B). And under the legislative rights affording prisoners under Art. 38, 39 - Preservation of Evidence Containing Biological Material, sec. (a)(b)(c) and (d) in their entirety. The "Request for Preparation of Transcripts," in this hearing was filed pursuant to T.R.A.P. 34.6 (b) also designating the exhibits to be included for Appellant Court review. Where the States witness perjured herself, (Ms. Patricia Kotter), more than once on the witness stand. Stating that she was right beside the defendant while he donated his DNA sample. Then stated that "She was not" during cross examination. Also, that she had driven the defendant from the police station. (WFPD), to the Wichita General Hospital. When in fact there was no Wichita General Hospital, in Wichita Falls, when this DNA was given in 2001. United Regional Health Care, had bought the location at that time. Also, stating that she had to drive 2 city blocks to get to the hospital. When the location of the alleged hospital was directly across the street from the (WFPD) police station. The States Attorney also stating on the record that the "Biological Evidence" in this case had been destroyed. The defendant, nor his Attorney of record the late Ms. Dorie Glickman, Attorney James Rasmussen, nor Attorney, Dustin E. Nimz, was of record thru the District Clerk's office and given notice by mail. The required 91 days to contest or agree. In accordance with Art. 38.39 (d). There by abusing this legislative right, and its discretion, and destroying its own evidence, making this conviction unsustainable. And the defendant now seeks appellant relief and review. For if the fingerprint card had been brought forth, no rational juror could have convicted the petitioner beyond a reasonable doubt. The documents under the chain of custody, No where showing the Wichita General Hospital, and where this alleged DNA evidence has never been challenged in a Court of Law, not under warrant when given.

Respectfully submitted
Charles Martin, #1101119
McConnell Unit, 3001 S. Emily Dr.
Beeville, Tx. 78201

cc: file date 12-30-13

STATE of Tex.                    In the 84TH District Court
N.                               Cause No. 32715—C
Charles Martin                   Trial for DNA Testing, Ch. 64, T. CCP.
                                 Wichita County Texas

Request for Preparation
Pursuant T.R.A.P. 34.6 B

Now Comes defendant Charles Lee Martin, currently detained at Wichita County Jail Annex, P.O. Box 8526, Wichita Falls, Tx. 76307. Bookin #AF 3738. And officially request the preparation of the (Reporters Record) Transcripts and exhibits of the recent trial and post conviction hearing which was recently held on 12-12-13 in the 89th District Court, Wichita County Courthouse. The Honorable, Mark T. Price, presiding as Judge in said hearing.

In accordance with T.R.A.P. 13.1 and 34.6 (b), the defendant now makes his official request for Reporter Record of the above mentioned proceedings held on the above mentioned date. And would designate that the fingerprint cards be included, along with all testimonies, ruling, and objection at trial be included. The defendant in this case contends that the evidence in this case is insufficient to sustain a finding of guilt. This request is made also pursuant to T.R.A.P. 34.6(C), (5). and would therefore, for purposes of Appeal that the Reporters Record be prepared in this case. Especially because the testable material, (case in chief have been destroyed) having never been challenged in a court of Law. Statue of Limitation to maintain this material being 40 years, especially when identity is an issue in the case.

Respectfully submitted,

Charles Martin

CC: File date: 12-19-13

APPENDIX #2

# Exhibit:
# "Transcripts"

REPORTER'S RECORD

VOLUME 2 OF 3 VOLUMES

FILED IN
2nd COURT OF APPEALS
FORT WORTH, TEXAS
1/28/2014 3:10:12 PM
DEBRA SPISAK
Clerk

TRIAL COURT CAUSE NO(S). 38,

COURT OF APPEALS NO. 02-14-00003-CR

STATE OF TEXAS          ) IN THE 89TH DISTRICT COURT
                        )
VS.                     ) OF
                        )
CHARLES MARTIN          ) WICHITA COUNTY, TEXAS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

POST-CONVICTION MOTION FOR DNA TESTING

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

On the 12th day of December, 2013, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable Mark T. Price, Judge presiding, held in Wichita Falls, Wichita County, Texas:

Proceedings reported by Machine Shorthand.

JOANNA BEVERAGE, CSR
OFFICIAL COURT REPORTER
89TH JUDICIAL DISTRICT
WICHITA COUNTY, TEXAS

## VOLUME 2
## POST-CONVICTION MOTION FOR DNA TESTING

December 12, 2013

| MOVANT'S WITNESSES | DIRECT | CROSS | VOIR DIRE | VOL. |
|---|---|---|---|---|
| Charles Martin | 5, 25 | 16, 30 | | 2 |

| STATE'S WITNESSES | DIRECT | CROSS | VOIR DIRE | VOL. |
|---|---|---|---|---|
| Patricia Koetter | 33, 41 47 | 39, 43 | | 2 |
| Annette Wang | 52, 59 | 57, 59 | | 2 |
| Charles Martin | 62 | | | 2 |

## ALPHABETICAL WITNESS INDEX

| WITNESSES | DIRECT | CROSS | VOIR DIRE | VOL. |
|---|---|---|---|---|
| Patricia Koetter | 33, 41 47 | 39, 43 | | 2 |
| Charles Martin | 5, 25 | 16, 30 | | 2 |
| Charles Martin | 62 | | | 2 |
| Annette Wang | 52, 59 | 57, 59 | | 2 |

Judge's Ruling......................................... 68

Reporter's Certificate................................ 69

## EXHIBIT INDEX

| MOVANT'S EXHIBITS | OFFERED | ADMITTED | VOL. |
|---|---|---|---|
| (None in volume.) | | | |

| STATE'S EXHIBITS | OFFERED | ADMITTED | VOL. |
|---|---|---|---|
| No. 1 Consent to Search | 48 | 48 | 2 |
| No. 2 Fingerprint Card (Not offered or admitted.) | | | |
| No. 3 Fingerprint Card (Not offered or admitted.) | | | |

A.    I compare the ridges and the fingerprints on both items to see that they occupy the same relative position.

Q.    And is it possible to take prints that are unknown or suspect and compare them to known prints and then form an opinion about whether it's the same person?

A.    Yes.

Q.    I -- have you previously looked at State's Exhibit 2, fingerprints -- a fingerprint card that goes along with the original case in this cause number as well as State's Exhibit 3, the fingerprint card that you just took from this Defendant?

A.    Yes.

Q.    Okay.  And have you made a comparison of those two items?

A.    Yes.

Q.    And what did -- did you form a conclusion based on that comparison?

MR. NIMZ:  Objection, Your Honor.  I don't think -- neither State's 1 or 2 (sic) are in evidence at this point.  One of them, we have no information whatsoever.  Obviously, 3 is -- I saw created here, but 2, if -- if the basis is to do it against a known fingerprint card, we have no knowledge

of what that fingerprint card is until we have that evidence in before the Court. And I don't think she can testify further regarding its comparison.

MS. JONES: Your Honor, things don't have to be admitted for her to talk about a comparison of. All the time we have DNA experts testify without actually admitting the vials of DNA. We've just taken prints here, which is State's Exhibit 3, which we've all -- all seen created. And State's 2 indicates what it is on it and that's what the subject of this is and what he asked to have tested and now we're here doing that and he's objecting to it.

MR. NIMZ: Your Honor, not merely -- I understand that not all evidence must be admitted before it can be reviewed by an expert. However, there must be some foundation behind that comparison itself in order to say this is a proper comparison to this item for the purpose of this.

I understand that the State's told us that it's from the original case, I think was the -- the question earlier, or that this was the item that's requested to be tested. There's no evidence whatsoever to show that that actually is the foundation for -- for her being able to review that.

While the science, I think is -- may be

somewhat good, what it was actual -- the actual items reviewed are going to be -- and then we're kind of in the same issue that we're here for in the first place, is what we're reviewing what was tested actually the thing that was to be tested?

THE COURT: Okay. The objection's overruled.

MR. NIMZ: Thank you, Your Honor.

Q. (BY MS. JONES) Ms. Wang, briefly, do you see some initials on that fingerprint card that you recognize?

A. Yes.

Q. And whose initials are those?

A. They're mine.

Q. On State's Exhibit 2, I'm sorry?

A. They're I -- I initialed on those.

Q. I'm sorry. State's --

MS. JONES: May I approach, Your Honor?

Q. (BY MS. JONES) State's Exhibit 3?

THE COURT: Yes, you may.

Q. (BY MS. JONES) I think I reversed the number of those. When they were originally -- let's see. Yeah, I'm sorry, the signature on State's Exhibit 2, the -- the old ones, is there a signature of a person that you recognize on there?

A.   Yes.

Q.   And who would that be?

A.   It's Callahan.

Q.   And who -- who do you know as Callahan with the Police Department?

A.   She was at one time a crime scene tech supervisor.

Q.   And was she employed with the Wichita Falls Police Department until fairly recently?

A.   Yes.

Q.   Is she now working out-of-state?

A.   Yes.

Q.   And have you seen her signature on numerous occasions?

A.   Yes.

Q.   Okay.  Does it also indicate that these were fingerprints of Charles Martin?

A.   Yes.

Q.   And does it also indicate that they were taken on February 5th, 2001?

A.   Yes.

Q.   Okay.  If you would now, please, state your opinion as to whether the fingerprints contained in State's Exhibit 2 and the fingerprints contained in State's Exhibit 3 are from the same person?



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 02-14-00003-CR

CHARLES MARTIN                                                    APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

----------

## FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY
## TRIAL COURT NO. 38,715-C

----------

## MEMORANDUM OPINION[1]

----------

### I.   INTRODUCTION

In a single point, Appellant Charles Martin argues that the trial court erred by denying his motion for post-conviction forensic DNA testing. *See* Tex. Code Crim. Proc. Ann. art. 64.01 (West Supp. 2014). We will affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. BACKGROUND

After Martin's underage daughter had a child, Child Protective Services (CPS) contacted Martin and requested a DNA sample to test for paternity. Martin complied and went to the Wichita Falls Police Department for testing. He had samples taken of his fingerprints, blood, hair, and saliva. Following the results of the DNA testing, Martin was charged with three counts of sexual assault of a child (counts I–III) and one count of aggravated sexual assault of a child (count IV). Martin pleaded guilty to all counts, and the trial court sentenced him to 20 years' confinement for counts I–III and 30 years' confinement for count IV.

Martin was incarcerated in the Middleton Unit of the Texas Department of Criminal Justice (TDCJ). After booking, he was informed that his fingerprints did not match those in his records from Wichita County, and he gave another set of fingerprints. Concerned that the blood sample associated with his fingerprints had been switched with someone else's sample, he filed a motion for post-conviction DNA testing.

At the hearing on his motion, Martin's sole evidence was his testimony as to the fingerprint discrepancy. He asserted that the discrepancy between the fingerprints on file with Wichita County and those taken at the Middleton Unit cast doubt on whether his DNA sample had actually been tested.[2] Martin agreed at

---

[2]Although Martin asserted in his motion and supporting affidavit that he "[did] not recall having blood taken" for DNA testing, he admitted at the hearing that he did recall having blood taken for purposes of DNA testing.

2

the hearing to submit to a new fingerprint sample; he stated that if that sample matched those associated with his DNA sample, he would not have "any further argument." The State then had a crime scene tech and latent examiner take Martin's fingerprints; she testified that those new prints matched the fingerprints on the fingerprint card signed by Martin and associated with the DNA sample given by Martin. The CPS worker who took Martin to the hospital to have his DNA sample taken also testified for the State. She explained that she saw Martin give the DNA sample and have his fingerprints taken and saw the nurses seal the box containing the sample and his fingerprints. The trial court denied Martin's chapter 64 motion.

### III.   LAW AND STANDARD OF REVIEW FOR CHAPTER 64 DNA TESTING

A chapter 64 motion for forensic DNA testing requests testing of biological material that

> was secured in relation to the offense that is the basis of the challenged conviction and was in the possession of the state during the trial of the offense, but:
>
> (1)   was not previously subjected to DNA testing; or
>
> (2)   although previously subjected to DNA testing, can be subjected to testing with newer testing techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the previous test.

*Id.* art. 64.01(b). A convicting court may order testing only if (1) the evidence "still exists and is in a condition making DNA testing possible," (2) the evidence "has been subjected to a chain of custody sufficient to establish that it has not been

3

substituted, tampered with, replaced, or altered in any material respect," and (3) "identity was or is an issue in the case." *Id.* art. 64.03(a)(1) (West Supp. 2014). To obtain the requested testing, the movant has the burden of showing by a preponderance of the evidence that he "would not have been convicted if exculpatory results had been obtained through DNA testing" and that "the request for the proposed DNA testing is not made to unreasonably delay the execution of sentence." *Id.* art. 64.03(a)(2).

When considering a challenge to a trial court's ruling on a motion for post-conviction DNA testing under chapter 64, we give almost total deference to the trial court's determination of issues of historical fact and application-of-law-to-fact issues that turn on credibility and demeanor, but we consider de novo all other application-of-law-to-fact questions. *Holberg v. State*, 425 S.W.3d 282, 284–85 (Tex. Crim. App. 2014) (citing *Rivera v. State*, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002)).

## IV. NO ERROR IN DENYING APPELLANT'S MOTION

In his sole point, Martin argues that because the fingerprints given at his booking at TDCJ allegedly differed from the fingerprints in the county records, there is a question as to whether his DNA sample, which he gave in conjunction with fingerprint samples, was actually his. The only evidence presented to show that Martin's blood sample had not been tested was his testimony regarding the fingerprint discrepancy. Martin presented no evidence that the fingerprints associated with his DNA sample were the same fingerprints on file with Wichita

4

County that allegedly did not match those taken at TDCJ. And at the hearing, Martin submitted to a new fingerprint sample, which the State's fingerprint expert confirmed matched the fingerprints associated with the DNA sample given by Martin. Because there is no evidence that the sample tested was not that provided by Martin, he has not demonstrated that the State never tested the biological material. *See* Tex. Code Crim. Proc. Ann. art. 64.01(b)(1).

Martin also asserts on appeal that even if his blood sample was previously tested, more reliable and accurate methods of forensic DNA testing now exist. *See id.* art. 64.01(b)(2). At the hearing on his motion, Martin briefly testified that "if PCR testing was available," it would be "appropriate" to have his DNA sample tested with PCR testing rather than STR testing. This general and conclusory testimony is insufficient to show a reasonably likelihood that PCR testing would create a more accurate and probative result than STR testing. *See id.*; *Swearingen v. State*, 303 S.W.3d 728, 733–34 (Tex. Crim. App. 2010); *Dinkins v. State*, 84 S.W.3d 639, 642 (Tex. Crim. App. 2002).

Because Martin has failed to provide facts in support of his motion, we hold that the trial court did not err by denying his chapter 64 motion. Accordingly, we overrule Martin's sole point.

## V.    CONCLUSION

Having overruled Martin's sole point, we affirm the trial court's judgment.

5



Charles Martin, #1101119
McConnell Unit
3001 S. Emily Dr.
Beeville, Tx. 78102

RECEIVED

JAN 2 6 2015

COURT OF APPEALS
SECOND DISTRICT OF TEXAS
DEBRA SPISAK, CLERK

Clerk,
Second Court of Appeals
Tim Curry Criminal Justice Center
401 W. Belknap, Suite 9000
Fort Worth, Texas 76196